Good morning, Your Honors. Dan Hauser on behalf of the Appellant Somerset Village Townhomes Condominium Owners Association, as assignee of Farmars-Gaduzzi. This case is about an insurance company who, to this very day, stubbornly refuses to acknowledge that it's logically impossible for a condo association to own the common elements of the condominium. I don't know if we need that. I remember when I took insurance law from Robert E. Keaton, one of the real axioms was that there's no way you can recover for inherent vice, and there are numerous ways that recovery attempts fail. A common one is the occurrence requirement. What's the occurrence? Well, Your Honor, in Washington, the occurrence focuses on the actual event producing injury as opposed to the negligent act of the offender, although this argument was raised extensively, briefed extensively in the first round of appeal. The events resulting from injury here are the inherent vice of poor construction. No, Your Honor, that's not correct. What happened was there were hidden defects in construction that hadn't caused any damage yet. Mr. Gaduzzi was on the board of the condo association. He found out about a couple defects. He repaired them. He failed to investigate further and identify any further defects. Had he done so, as he was charged with doing as a fiduciary of the unit owners and the association, he would have discovered other defects. He would have prevented any property damage from occurring. He failed to do so. As a result, he caused property damage. Our round one appeal to this Court, that's exactly what the Ninth Circuit held. It held his acts, if negligent, were a cause of property damage, and they were an occurrence. It doesn't say that exactly. It could be a cause of property damage but not covered if they weren't an occurrence. Or to put it differently, if it wasn't negligence, then it wouldn't be covered, would it? Correct. If his acts were intentional and produced only intended and expected results, then the expected, intended exclusion would apply, and also there would be no occurrence. But the worst fact that you have is Mr. Gaduzzi's admission on deposition that he essentially adopted the ostrich with its head in the sand approach. He didn't want to look behind the construction because he'd already lost $300,000. He was in danger of defaulting on his bank loan, and he wasn't anxious to have a whole bunch more repair bills that he would have to fund. That doesn't sound like negligence to me. That sounds like intentional misconduct in the sense that he didn't want to look because he was afraid of what he would find. Well, Your Honor, you have to put yourself in the position of a developer in this situation. Developers don't understand that they have this duty to the unit owners. They truly don't. They don't understand that they're fiduciaries. They never agreed to this. It's a duty that's imposed upon them by statute, a statute that they've never read and are not aware of. And he is the only officer and director of the association for a period of nine months. Correct. And it is true that he, I believe, had a duty to investigate and to pay for an intrusive investigation. And he was on notice, was he not, that there might be problems because he was notified there were leaks that he had to repair? He was on notice of a couple of particular issues that were raised by unit owners. They were hidden defects. You can't see them until you open up the building. He was on notice of some issues that arose during construction, and he attempted to address those with the general contractor. That's what he was aware of. And he should have. And then, according to the district court, he coupled that with the admission that he made on deposition, and the district court concluded, as a matter of law, there's no occurrence here. First of all, it's not a deposition. His deposition transcript was never submitted into the record. There's never any oral argument. It's simply a declaration and an interrogatory response. But it was before the district court, was it not? It was, yeah. The exact same evidence. What difference does it make whether it's in deposition or declaration form? It's a sworn statement. It's an admission against interest by a party. Correct. And what he said was, in retrospect, I should have gone back and done more. I didn't realize at the time I had a duty to do that. That's not how I read that. What I read was I didn't look because I didn't want to know for fear of what I would find because it was going to cost me more money than I'd already lost on the project. Well, I can point you to the record. I read the statement, and the district court seemed to think that was a pretty important piece of evidence. Yes, sir. And the Ninth Circuit also read that statement the first time around and said we need more of a determination to see if there's negligence. There was no more determination. It went back down, and the court refused to. There was additional briefing. Was there not briefing and argument on remand? There was no argument. There's never been any oral argument at all, ever. Was there additional briefing? Yes. Okay. So arguments are contained in briefs, are they not? Yes. All right. Your Honor, I'd like to actually focus, though, on the bad faith issues first, if I may. Could you back up just a sec before you get to that? Yes. There's this Washington case, Detwile v. J.C. Penney, where the Supreme Court of Washington lays out Washington law of what the word accident means in an insurance policy. And they say that an accident is never present when a deliberate act is performed, unless some additional unexpected, independent, and unforeseen happening occurs, which produces the injury. Should we apply that Detwiler case? And if so, why doesn't this case fall on the wrong side of it? Well, Your Honor, if you will look at Gruel Construction and also the Wellpoint case. I didn't actually brief these in this round of appeal, but in the prior appeal there's extensive briefing on what constitutes an accident or an occurrence. Gruel Construction v. Insurance Company of North America, 11 Washington App, 632, is the key case on an occurrence for a construction defect. Also, Wellbrock v. Assurance Co. of America, 90 Washington App, 234. Those are the cases that say really what you focus on is the event that produces injury. Here you had really the event of water, rain, coming in through construction defects and causing an accident. That's really the occurrence. A lot of times the courts do sort of use a shorthand definition of occurrence and focus on the actions of the actor, but really that's not technically the occurrence requirement. That's the legal liability requirement. He's got to be liable for the occurrence. But getting back to the bad faith issue, Your Honor, as you know. I was actually thinking a step before that in time. The reason I'm not so interested in the bad faith is if they did everything their contract requires, then they can't have bad faith piling on top of a breach of contract to exacerbate the damages. It doesn't do anything independently for you. So I'm still interested in the insurance contract. And on that, the problem that I have with interpreting occurrence your way is it means that a liability policy can be transformed into a kind of construction surety bond or performance bond. You can build a shoddy housing, give yourself a fiduciary responsibility to manage the shoddy housing and get a liability policy that covers you. And then when the shoddy housing starts giving rise to problems, enter into a confession of judgment, assignment of rights and covenant not to execute in order to protect yourself and recover the million dollars that you need to fix up the shoddy housing from your liability policy. And it seems like that's what this language in Deptweiler protects against, as well as the policy language. Your Honor, I know you want to talk about occurrences, but just for one second, I have to correct you. There is a completely separate analysis under bad faith, and it does make a huge difference. Because even if you were to conclude that there's no indemnity and that the policy at the end of the day does not provide coverage, in Washington we have coverage by a stop loss. As I recall, bad faith is a short term for bad faith refusal to cover or bad faith refusal to defend. And if there is no obligation to cover and no obligation to defend, then there is no bad faith refusal to cover or bad faith refusal to defend. There are two separate obligations, duty to defend and duty to indemnify. Of course, and duty to defend is much broader. Of course, and it's judged at the time when the complaint is filed. So the question is, what did the complaint allege? It clearly alleged causation. It clearly alleged negligence. It clearly alleged that Somerset Village was a condominium. What's a condominium? Something divided into pieces of individual ownership and collective ownership. And the law requires that the unit owners have to own 100% of the common elements. So here's the unassailable logical syllogism. If the common elements were owned by this condo association, then Somerset Village would not be a condominium. Hold on. I can't find the complaint at the moment for some reason. ER 88 through 98. Thanks. Okay, got it. Back to my syllogism here. If the common elements were owned by this condo association, then Somerset Village is not a condominium as a matter of law. Somerset Village is a condominium, and the complaint alleges it's a condominium. So it follows as a matter of logical necessity that the association does not and cannot own the common elements. If CAU had read even the first sentence of the complaint. But I thought the claim was being brought under the errors and omissions provisions of the policy. No, it's a CGL policy. But wasn't there also provision to protect the officers and directors against E&O claims? The D&O coverage does not apply because their CAU specifically excluded claims brought by one insured against another. Oh, so you're not arguing under the D&O now? I never have. I made the same mistake with Judge Coleman. I thought you were. I thought the whole point was he had a fiduciary obligation as a director of the association to make inquiry in order to find the leaks and fix them, and he didn't do that. That is correct, Your Honor, but the D&O coverage does not apply, has never applied. We've never contended it applied. It's the CGL coverage. It's coverage for property damage caused by an occurrence. He is insured as an officer and director of the association under that coverage  The theory though is the same, right? Yes. That he's covered because he was negligent in not inquiring into and discovering and repairing. The theory is the same, but there's a lot of important differences in what the different types of coverages cover. D&O's claims made coverage, it doesn't cover property damage. CGL policies are occurrence-based policies, and they cover property damage. That's what we're talking about here. And once again, if you look at... And where did the duty to defend arise? The duty to defend arose at the time when the complaint was filed. No, I mean which policy did it arise under? The CGL, commercial general liability policy. Yes, Your Honor. And so if CAU had read even the first sentence of the complaint at ER 88, it would have seen that the allegation was that Somerset Village is a condominium. That means, as a matter of logical necessity, that the association cannot own any part of the common elements. And yet, CAU refused to defend for 15 months on the theory that the association owned the common elements. They continued to do so even for five months after the association sent them a copy of the declaration, the document that created the condo. And here's a copy of ER 12-0, Exhibit B to the declaration. 12-0? 12-0. Sorry, I... 120? No, 12, subpart O. O, thank you. Okay. It lists the 14 units here, and each of them own an interest ranging between 6.5% and 8.5% in the common elements. Here it says they own 100% of the common elements, right? And yet, CAU continued to refuse to defend based on its theory that the association owned the common elements. Now, after 15 months, when the district court finally ruled that, in fact, the association did not own any part of the common elements, at that point, then CAU changed course and they said, Well, they may not have owned them in the sense of having legal title, but we thought they had these other incidents of ownership. And apparently they based this on State Farm versus English Cove. If you look at English Cove, it specifically identifies the incidents of ownership as The association has none of those incidents of ownership. Only the unit owners have that. And there's another very recent case exactly on point, Willing versus CAU, in which Judge Lasnik holds that. Right, the condo owners, unit owners, have those incidents of ownership. The association has no incidents of ownership. So, why did CAU refuse to defend? They can't explain their owned property refusal to defend. It makes no sense. It's unreasonable as a matter of law. They sometimes argue that, well, maybe the complaint didn't really allege causation, but if you look at ER 94, it says the breaches of fiduciary duty caused property damage. They sometimes say, well, we didn't allege negligence. Well, you look at ER 94, again, it says his negligent acts caused property damage. So, all of the allegations were there in the complaint. There's absolutely no reason to refuse to defend this case. And yet, CAU did it for 15 months with no justification whatsoever. Thank you. Thank you, counsel. Your time has expired. You ought to wind up. Thank you, Your Honor. Thank you, counsel. Good morning, Your Honor. I'm Joanne Henry, attorney for the Appellee Community Association Underwriters. I think the court seems to be more interested in the coverage issues, the occurrence and expected or intended. How would they play together? Suppose the insurance company did give an erroneous reason for declining to defend. Does that just mean a standard fall on liability on their coverage or do they owe attorney's fees or what? The distinction on the bad faith is that the failure to defend must be more than just erroneous. It has to be unreasonable, frivolous or unfounded. And that was the decision that was presented to the district court. And the district court found that we were erroneous. And that was the point at which, when the court told us that our reading of that exclusion was in error, CAU turned around and offered a defense, which Mr. Gattusi refused. And he complains here that he's been horribly prejudiced by this failure to defend when we finally, and it was, as counsel points out, 15 months when we finally offered it, he said no. So here the issue on the bad faith is whether the position that the parties took on the exclusion initially was reasonable. And the court held that it was. He held as a matter of law that it was. The issue here that the appellant is trying to raise on appeal is that there are issues of fact. And of course, we're saying that you can't change horses in midstream. You can't invite the court to rule on something as a matter of law and then come back on remand without presenting any additional evidence and say now there's issues of fact. I think the bad faith case is really out of this case because the appellant was simply asking the district court to reconsider the prior summary judgment motion. And the court declined to do so because nothing had changed. There was no new evidence. There was no new law. What we were looking at on remand was what the Ninth Circuit sent back the first time, which was the expected or intended and occurrence issues. And that's the one that Judge Tallman pointed out is that's the shorthand term is negligence. What is the proper path in light of what you view as established in the first litigation plus what is established as law of the case by our remand and the language in the remand? What is the proper path in your view to the result? Okay. The Ninth Circuit on the first appeal rejected our argument that there was no causation. They found that what Mr. Gaddusi did in breaching his fiduciary duty, failing to investigate, failing to repair, quote, caused, end quote, property damage. So that's decided that was in the case or that issue is out of the case. It's decided. On remand, they said if his actions were merely negligent, then there would be coverage. And this is under the general liability coverage, property damage caused by an occurrence. The merely negligent encompasses both were his actions an occurrence, meaning an accident, and also was the damage resulting from those actions expected or intended. And those were the issues that were presented to the district court this time around on the summary judgment motion. The court ruled based on Mr. Gaddusi's extensive admissions as to what he knew, that the damage that resulted from his failure to investigate, failing to warn, failing to repair was expected as a matter of law. And I think the district court went through and analyzed in excruciating detail Mr. Gaddusi's admissions, which were both in his interrogatory answers that he drafted in response to my questions. And I asked, what did you know? What did you do? And also in his declaration, which was drafted for him in response to the first summary judgment motion. He admitted that he had knowledge during the construction that there were numerous defects, including water intrusion. He admits that- Including water what? Intrusion, water intrusion. For some reason, nobody can build a condominium that doesn't leak. These defects were predominantly improper flashing at the roof transitions and improper siding, which lets the water in. And he saw both of those things, numerous defects, during the construction. He admits that he wasn't there on the site all the time, and that there very probably, I think he said possibly, were defects that he didn't catch and correct. He also had the extensive recitation of all of the problems that he had with his contractor. He admits that after it was complete and while he was director, several unit owners came to him complaining of leakage, defects, water damage, and these things that they were complaining of were consistent with what he'd seen during the construction. He admits that he didn't investigate further. He admits that he didn't disclose this information to the association when he handed it over to the owner so that they could investigate. He admits that he has a conflict of interest, he had a conflict of interest. And, this is the one, I was not eager to go looking for problems and additional repair expense. He simply turned a blind eye to the situation. You know, the information that he knew. I think it's interesting that the association, on behalf of Mr. Paducey, attempts to justify his behavior, that he didn't have construction experience. No one explicitly told him that the things that he knew about might cause damage in the future, and that just because he had fixed the ones that he had found, that he wasn't bound to expect more. The district court properly relied on the case law on this point, that even though this is a so-called subjective standard as to what he expected or intended, that it has to be based on facts. And the courts have also held that it's the insured that has to prove that he didn't expect the damage. And here, we have Mr. Paducey admitting that he had all of his predicate knowledge, and then his conclusory statement, but I didn't mean to cause any harm. The interesting thing that I have found in this argument, and it came up in the reply brief and then again today, was that the association admits that he had a duty as a board member, that he had knowledge of these defects. He had a duty to investigate for further defects. So, I'm still a little confused, though, Ms. Henry. Isn't that an E&O claim? Not under, okay. In this policy, any director who's affiliated with the developer is not an insured under the D&O. We've always agreed this is not a D&O claim. Okay. This is the sort of thing that would be covered under D&O if he were an independent director. So, the theory is what? That because the name insured is the association, and these are the officers of the association who must act in its stead, that their negligence would be covered under the CGL policy? Well, frankly, we always thought it was a bit of a shoehorn. But, yeah, this is the association's policy. The association's policy provides general liability coverage for all directors and officers, even those that are affiliated with the director. It's for standard property damage caused by an occurrence. If Mr. Gaddusi, while he was a director, had gone out into the yard, directed the gardeners to chop down a tree and dropped it on somebody's car, liability coverage, property damage. Or if the directors didn't get the snow and ice cleared off the lot. And somebody slipped in the parking lot, yeah. Oh, I understand that. So, this is, you know, when you've got a million dollars worth of damage to the condominium, you're looking for coverage somewhere. And this is, you know, this company writes policies for condominium associations. We don't write construction surety bonds. We don't write general liability coverage for contractors and developers. They're trying to shoehorn this liability that Mr. Gaddusi supposedly had as director into the property damage coverage where it doesn't really fit, which is why the court has some questions. But in this case, since the district court ruled on this, that because of the nature of his conduct, both what he knew and what he was doing, that both the damage was expected or intended, and his conduct, the breach of fiduciary duty, wasn't an occurrence. And that was the one where we managed to find an Eighth Circuit case, which I think the facts are virtually identical to this one, that J.E. Jones case, which held that this type of breach of duty is not an occurrence because it's the result of the deliberate acts and foreseeable consequences. It's equivalent to a breach of contract. And, you know, in that case, the person who was the, on behalf of, he was a trustee under a subadventure of trust, and he was supposed to maintain the common elements of that housing development, got sued for not doing so, and they tried to get that under the general liability coverage. And the result in that case was an occurrence is an accident, an occurrence is a fortuitous event, an occurrence is not this kind of breach of fiduciary duty where you've got control over what you do. Kennedy. Which case was that again? That was J.E. Jones versus. J.D. Jones is good enough. J.E. Jones? J.E. Jones, construction versus Chubb and Sons, 486 Bed 3rd, 337. And that was applying state law, but in our brief, we also analyzed how the state law in question is the same as state law in Washington regarding what is an accident and what is not. Washington courts hold that breach of contract is not an occurrence. Breach of warranty is not an occurrence. We contend that this kind of breach of fiduciary duty, the failure to do something that you've assumed under your obligations, under the condominium declaration, his obligations under the condominium law, that those are not occurrences. They're not accidents. And as I said, regarding the bad faith issue, the key issue here I think that you will find on appeal is that this was simply the district court's rejection of the invitation by the association to reconsider its prior ruling that as a matter of law, the conduct of CAU, while it was mistaken in relying on the owned property exclusion, and by the way, the owned property exclusion is owned or occupied, not just owned. We all know that condominium associations don't own the common elements. But that the actions of CAU were not unreasonable. This was something that was extensively briefed. The court went through all of the arguments of the parties, came back and said, yes, I find that you, insurance company, are wrong. This exclusion doesn't categorically apply. But when addressed with that exact point, was it unreasonable, frivolous, or unfounded, the court said no, that being wrong is not enough for a bad faith claim. So in that particular decision of the court, I think to the extent that the court is going to review it, would be review for abuse of discretion on the district court's failure to reconsider on that issue. That was kind of a, when you're asking about the status of the case on remand, that was a little unusual because the first appeal did present the two issues. It presented the argument for coverage on the causation issue, and it also presented an argument on the bad faith issue. And the original panel remanded for new proceedings on the coverage issue and didn't say anything at all about the bad faith issue. Didn't say it was affirmed, didn't say it was reversed. It was as if it weren't there. It was a pretty terse memorandum disposition. I think we referred to it in the new briefing is that it wasn't a model of clarity. It's a very short disposition. I've never seen one shorter. It's 14-point tight, too. So if that had been a 12-point, it wouldn't have even been a full page. But it did tell us what we had to do on remand regarding the coverage issue. And we did, and we addressed those issues, and the court again found that appropriate for summary judgment. And we believe that that decision is amply sustainable. We had the situation where the court was looking at Mr. Gaddusi's own words about what he did, what he knew, what he saw, what he thought, and found as a matter of law that those were not occurrences and the damage wasn't or was expected as a matter of law. Thank you, sirs. Thank you. Thank you, Ms. Council. Do I have 30 seconds? The first decision by the district court was no bad faith because you might have prevailed on this no causation argument. It went up to the Ninth Circuit. Ninth Circuit said, wrong, there is causation, go back, redo. The only redo was still no bad faith, no explanation why. There is no explanation for the refusal to defend. Our panel didn't say anything about the bad faith issue. Correct. That is true. It didn't say affirmed. It didn't say reversed. It said remand and for further proceedings consistent with this decision that causation is not the excuse to justify the refusal to defend. Well, no. Was the bad faith argued on appeal? Yes, it was. I still don't see how you'd ever get to bad faith, frankly. I mean, bad faith is a way of turning a contract claim into a tort claim so you can take the cap off damages. And in order to turn it into a tort claim, it has to be basically on purpose, not just a mistake, so that it's an insurance company choosing not to honor its known obligation. And I don't see where you even get to first base. That's absolutely not true. In Washington, Your Honor, if you have a bad faith refusal to defend, you get coverage by estoppel, even if you later find out there was no duty to indemnify. That's Kirk v. Mount Airy. That's Trush v. Manport. It depends on the circumstances. Yes, it does. And one final point. Wu v. Fireman's Fund, the most factually similar case here, had not been decided. Isn't that the one about the dentist who plays the joke? The point of that case is if an insurer refuses to defend based on its interpretation of case law, like CAU refused to defend based on English code, it's an issue of fact for the jury as to whether or not that was reasonable. Okay. Thank you, Counsel. Thank you, Your Honor. Thank you. Far Northwest v. Community Association of Underwriters is submitted.
judges: Kleinfeld, Tashima, Tallman